RONALD M. SIMONS, Appellant, v BLUE CROSS AND BLUE SHIELD OF GREATER NEW YORK, Respondent.

First Department, January 10, 1989

## APPEARANCES OF COUNSEL

*J. Owen Zurhellen, III,* for appellant.

*Richard E. Juzumas* of counsel *(Ellen Barrett Levin,* attorney), for respondent.

### OPINION OF THE COURT

MILONAS, J.

Plaintiff Ronald M. Simons is the holder of a medical insurance policy issued by defendant Blue Cross and Blue Shield of Greater New York pursuant to which he and his family are entitled to hospital benefits of 120 days of hospitalization in each calendar year for appropriate medical treatment and 30 days of in-hospital care for psychiatric disorders. In 1986, plaintiff's teen-age daughter, Amy, who suffers from anorexia nervosa, an eating disorder, was admitted on two separate occasions to Westchester County Medical Center. Although the disease is a psychiatric one, it frequently results in physical infirmities caused by severe malnutrition. However, when plaintiff submitted claims for the cost of Amy's treatment, defendant denied payment for all hospitalization in excess of the first 30 days, asserting that additional coverage was excluded under the psychiatric care limitation contained in the policy. In explaining its action, one of defendant's vice-presidents wrote to plaintiff that:

" 'Anorexia Nervosa' is a psychiatric syndrome properly treated according to generally accepted psychiatric practice which includes individual, group, and family psychotherapy, behavior therapy related to weight gain/loss, eating and physical activity, and the like. Accordingly, it is our policy to consider benefits under the mental or nervous disorders provision of the contract. We do, however, recognize that there are certain times when the effects of this psychological disorder have proceeded to such a point that the patient's physical condition may develop an acute instability requiring immediate attention on a medical/physiological level of treatment. If such care is given in a short term general hospital, we would provide benefits on the specific days the emergency medical care is rendered.

"I asked our Medical Director to review the medical records

for your daughter's January 2 to February 21, 1986 and May 12 to May 27, 1986 admissions to Westchester County Medical Center. Our Medical Director has confirmed that the services rendered on each day of hospitalization are basically psychiatric in nature. There is no evidence documenting that Amy required emergency care of an acute medical condition. Accordingly, our extension of 30 benefit days (January 2 through January 31, 1986) is correct. Further benefits are not available. Since we extended the maximum number of psychiatric benefit days for the calendar year 1986, we could not provide coverage for Amy's subsequent admission from May 27 to August 30, 1986 at the Westchester Division of New York Hospital."

Plaintiff commenced the instant action to recover $60,000, the amount of the unpaid balance of the cost of Amy's medical treatment. In response, defendant asserted that it had provided the full benefits available under the subject contract and that plaintiff had, therefore, failed to state a cause of action. Plaintiff thereafter moved for summary judgment on the ground that there is no genuine issue concerning the nature of the care and treatment received by Amy. In that regard, it is plaintiff's contention that where the underlying facts are not in dispute, the applicability of an exclusionary clause in defendant's standard form policy is purely an issue of law for the determination of the court, and, thus, the Supreme Court was in error in perceiving the existence of a question of fact such as would preclude summary judgment. Defendant, on the other hand, states that the medical affidavits offered by the parties in connection with the motion are in conflict with respect to the nature of care rendered to Amy, and this in itself presents a question of fact warranting the denial of summary judgment.

An examination of the record herein clearly demonstrates that there is no disagreement over the actual treatment administered to Amy but, rather, whether that treatment is primarily medical in nature, as plaintiff claims, or constitutes psychiatric care, as defendant urges. Dr. D. Clare Fried, who at the time of Amy's first hospitalization was Assistant Professor of Pediatrics in the Division of Adolescent Medicine at New York Medical College, which is associated with Westchester County Medical Center, and participated in her treatment, asserts in an affidavit that when Amy was observed in the emergency room preceding her admission "her weight was 72-½ lbs., her blood pressure was very low (90/50). Her weight

had been 95-98 lbs. before her disorder. Her doctor (Dr. Newman) recommended admission to the hospital because Amy had lost 7 lbs., almost 10% of her body mass, over the preceding two weeks, and she was admitted on January 2, 1986. Upon her admission, her weight further decreased to 68 lbs. She was emaciated, malnourished, dehydrated and hypotensive. She required immediate medical treatment for these conditions." Dr. Fried further averred that "Amy was given a battery of medical tests to ascertain the extent of malnourishment and the possibility of chemical imbalances. She was fed via naso-gastric tube for a period and then her diet was carefully monitored. She gained weight and the physical conditions associated with malnourishment were alleviated. Amy was evaluated by a psychiatrist during her admission. However, the reason for Amy's admission was entirely medical and her treatment was directed toward alleviating the physical conditions resulting from malnourishment."

According to Dr. Steven M. Tames in his affidavit, "Amy Simons was admitted on an emergency basis to Westchester County Medical Center on May 12, 1986. Her weight was 72-¾ lbs., her blood pressure was 72/62 and she was significantly dehydrated. She was fed by naso-gastric tube and by intravenous fluids, and various tests were performed to evaluate her physical status. A neurological consultation and evaluation (including a CT scan) was performed to rule out a specific neurological cause (e.g. hypothalamic tumor) of her eating disorder and persistent severe headaches. Her treatment was essentially the same as in her previous admission—namely, medical treatment for the physical conditions resulting from malnutrition." In addition, plaintiff attached to his moving papers extensive hospital records, including nurses' notes and a discharge summary dated February 21, 1986 in which the final diagnosis was given as "1.) Malnutrition with hypotension and bradycardia; 2.) Chronic weight loss; 3.) Atypical eating disorder." Amy was discharged "in good and stable condition, to continue with outpatient therapy at a private clinic in Philadelphia which also includes the family. This will be done one session a week, and the patient is to continue living at home."

Defendant's medical director, Dr. Marvin Blitz, in contrast, claims in his affidavit that "[a]t no time during the hospitalization at issue did Amy require medical management according to my medical evaluation and the standards set forth in exhibit A", those standards being a series of eight categories

which defendant has established to determine whether the condition of the patient is primarily psychiatric or medical in nature. Pursuant to this suggested rating system, a score of 10 plus or over means that the case has been approved for medical management, whereas a score below seven plus indicates that the treatment was not medical. A score of plus seven through plus nine warrants special review. Applying its eight criteria to Amy's situation, defendant assigned a point value of minus one to her hospitalization. The eight factors considered in defendant's system are the level of electrolytes (sodium, chlorides, BUN or NPN, creatinine), body weight, activity level, nursing care, supplementary feedings, life-supporting devices, nature of the physicians' therapy provided, and the presence of complications. However, it is clear that Dr. Blitz does not dispute plaintiff's account of the treatment administered to Amy but, rather, its significance. For example, although he acknowledges that during portions of her stay at Westchester Medical Center, she was fed through a nasogastric tube and that she had lost 30 pounds or approximately 30% of her body weight since the age of 12, he insists that "[w]hile this weight loss certainly represents a serious consequence of Amy's anorexia nervosa, it is not medically sound to state that the sole fact of her weight loss necessitated hospitalization or required medical management." Dr. Blitz, additionally, does not challenge the diagnosis of plaintiff's physicians that she was also dehydrated and hypotensive and received immediate medical attention for these conditions. Instead, he emphasizes the fact that Amy was found to suffer from depression, and, moreover, he deems it significant that the "record is devoid of any reference either to life supporting devices such as a respirator, or to the presence of complications such as infections".

In reply, plaintiff submitted a letter from its excess insurer, Chubb Life Insurance Company, to the effect that it had determined Amy's hospital admissions to be for medical and not psychiatric purposes. The Supreme Court, nonetheless, denied the motion for summary judgment, holding that "[t]here are such issues here * * * as the nature, origin and type of treatment appropriate and upon such finding, the policy coverage." Yet, notwithstanding the conclusion by the IAS court, there is no dispute between the parties concerning the appropriate treatment for Amy's condition, or even the type of care which Amy actually received. The only disagreement involved herein is whether the treatment in question

was primarily medical or psychiatric and, therefore, whether defendant properly invoked the policy exclusion to deny plaintiff's medical claims.

It is axiomatic that "ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause" *(Breed v Insurance Co.,* 46 NY2d 351, 353; *see also, Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 NY2d 390; *Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356). Moreover, "[t]he burden of proving that a claim falls within the exclusions of an insurance policy rests with the insurer" *(Neuwirth v Blue Cross & Blue Shield,* 62 NY2d 718, 719). Despite defendant's reliance upon its own eight-criteria evaluation as a basis for determining that Amy was hospitalized largely for psychiatric purposes, it has not sustained its burden of showing that the exclusionary clause in the policy was properly applied. Amy's course of treatment is set forth in her physicians' affidavits and in her medical records. Defendant does not challenge the accuracy of the statements contained therein and, indeed, accepts as true the treatment detailed in the attachments to plaintiff's moving papers. Thus, the only issue is whether Amy's treatment can be characterized as "psychiatric", and, in that connection, an insurance policy is to be construed according to the precepts of common speech and the reasonable expectation and purpose of the ordinary individual *(Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., supra),* and words and phrases used in a contract must be given their plain meaning *(Laba v Carey,* 29 NY2d 302, *rearg denied* 30 NY2d 694).

The plain, ordinary meaning of "psychiatric" care is the sort of treatment, such a electroshock therapy and psychotropic medication, rendered to a patient who has been admitted to a psychiatric ward in order to attend to his or her psychiatric disorder. Amy was hospitalized because of malnutrition and hypotension, not depression or some other psychological malady, and, in that respect, she was provided with the medical treatment necessary to alleviate her particular physical problems. The fact that Amy's physical disability was the result of the psychiatric condition known as anorexia nervosa does not transform what is customarily medical treatment into psychiatric treatment; malnutrition and hypotension necessitate the same medical care regardless of whether the condition is attributable to anorexia nervosa, some organic source or simply the financial inability to procure food. It is the physical condition, and the treatment required to deal

with that condition, which is crucial, not the reason for the disorder. Similarly, the fact that a patient may also receive psychological counseling along with the medical treatment does not negate that the fundamental nature of the treatment being accorded is medical. An attempted suicide, for instance, may have profound psychiatric problems warranting psychotherapy or other psychiatric care but the patient must still be medically treated for the self-inflicted drug overdose or gunshot wound endangering his or her life.

Amy was not admitted to a psychiatric unit, and her care, consisting of nasogastric feeding, diet supervision, medication and a variety of physical diagnostic tests, was directed at reversing her severe weight loss and attendant physical symptoms. Any person suffering from malnutrition would have received the same or comparable treatment. Amy was hospitalized for malnutrition and hypotension, not anorexia nervosa, and she was released from the hospital when her physical condition had stabilized. Her psychiatric disorder, or anorexia nervosa, persisted after she departed Westchester Medical Center, and upon her discharge, she was to continue out-patient therapy for that disorder. Certainly, Amy's physical condition could have been more serious than it was; she was not so ill that she had to be placed on a life-support system. Yet, the gravity of a disease does not determine its fundamental nature any more than does the cause of that illness. Simply, malnutrition and hypotension are physical conditions rather than psychiatric ones. Therefore, plaintiff's insurance contract mandates that defendant pay benefits for Amy's entire hospitalization.

Consequently, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered on February 3, 1988, which denied plaintiff's motion for summary judgment pursuant to CPLR 3212, should be reversed, on the law, and the motion for summary judgment granted, with costs and disbursements.

CARRO, J. P., ASCH, MILONAS and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on February 3, 1988, unanimously reversed, on the law, and the motion for summary judgment granted. Appellant shall recover of respondent $75 costs and disbursements of this appeal.