DENNIS, Circuit Judge,
dissenting.
This court is required to review de novo the district court’s decision to grant summary judgment to the insurance company and the employer, applying the same criteria employed by the court in the first instance. Harper v. Harris County, Texas, 21 F.3d 597 (5th Cir.1994). Thus, this panel should reverse unless “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show *985 that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Viewing the evidence and inferences that reasonably may be drawn therefrom in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. Harper v. Harris County, Texas, 21 F.3d at 600; King v. Chide, 974 F.2d 653, 656 (5th Cir.1992).
A denial of benefits under an ERISA plan must be reviewed de novo “unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.” Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). The Group Long Term Disability Insurance policy issued by Reliance to Ford, Bacon and Davis does not contain any language conferring discretionary authority upon Reliance to determine eligibility for benefits or to construe the terms of the plan. The policy insuring clause states: “We will pay a Monthly Benefit if an insured: (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy: (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability to us.” At most, if at all, this provision vests in Reliance some discretion in determining whether the “proof of the Total Disability” was “satisfactory.” But the fact that Lynd is totally disabled has been conceded by defendants for purposes of the motion for summary judgment. The only question that has been placed at issue is whether the benefits to which Lynd is entitled are restricted due to the cause of his total disability under a limitation clause which provides: “Monthly Benefits for Total Disability due to mental or nervous disorders will not be payable beyond twenty-four (24) months unless the insured is in a Hospital or Institution at the end of the twenty-four (24) month period.” There is no evidence under the limitations provision or any other part of the policy that Reliance has the power to exercise discretion to make determinations whether a total disability is due to mental or nervous disorders to which the courts must pay deference. Furthermore, there is simply no support for importing the deferential or arbitrary and capricious standard into ERISA on a wholesale basis. Firestone Tire & Rubber Co., 489 U.S. at 109-114, 109 S.Ct. at 953-56. Accordingly, Reliance’s denial of benefits challenged by Lynd is to be reviewed under a de novo standard.
The group long term disability insurance policy (non-participating) that covers Lynd is an “employee welfare benefit plan” as defined by ERISA, rather than state contract law. Therefore, federal law governs his claim.[1] Todd v. AIG Life Ins. Co., 47 F.3d 1448 (5th Cir.1995). Congress, in adopting ERISA, expected that “a federal common law of rights and obligations under ERISA-regulated plans would develop.” Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557-58, 95 L.Ed.2d 39 (1987); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). In ascertaining the applicable federal common law, this court has explained we may “draw guidance from analogous state law.” Todd v. AIG Life Ins. Co. 47 F.3d 1448, 1451 (5th Cir.1995) (quoting) McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir.1990) (citation omitted)).
It is well settled in this Circuit and a majority of the federal courts that, in construing the language of ERISA plans, federal law must follow the rule of contra proferen-tem, which directs that when plan terms *986 remain ambiguous after applying ordinary principles of contract interpretation, courts are to construe them strictly in favor of the insured. Todd v. AIG Life Ins. Co., 47 F.3d at 1451-52; Ramsey v. Colonial Life Ins. Co. of America, 12 F.3d 472, 479 (5th Cir.1994); Hansen v. Continental Ins. Co., 940 F.2d 971, 982 (5th Cir.1991); Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1257-58 (3d Cir.1993); McNeilly v. Bankers United Life Assurance Co., 999 F.2d 1199, 1201 (7th Cir.1993); Delk v. Durham Life Ins. Co., 959 F.2d 104, 106 (8th Cir.1992); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 539-40 (9th Cir.) cert. denied, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990); Glocker v. W.R. Grace & Co., 974 F.2d 540, 544 (4th Cir.1992); see also, Couch on Insurance § 7:12 at 7-23 n. 78 (3d ed.), citing the above and additional authorities, including Lee v. Blue Cross/Blue Shield, 10 F.3d 1547 (11th Cir.1994).
In fact, according to the law of every state and the District of Columbia, ambiguities in insurance contracts must be construed against the insurer. Kunin v. Benefit Trust Life Ins., 910 F.2d 534 (9th Cir.1990). “The words, ‘the contract is to be construed against the insurer’ comprise the most familiar expression in the reports of insurance cases.” 2 Couch on Insurance § 22:14 at 22-31 (3d ed.).
Although provisos, exceptions, or exemptions, and words of limitation in the nature of an exception, may be freely contracted for by the insurer, state courts are virtually unanimous in holding that such terms are strictly construed against the insurer where they are of uncertain import or reasonably susceptible of a double construction, or negate coverage provided elsewhere in the policy. See 2 Couch on Insurance § 22:31 at 22-66 & 22-67 (3d ed.), and voluminous citations there collected. We may use state common law as a basis for federal common law to the extent that state law is not inconsistent with congressional policy concerns. Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1451 (5th Cir.1995); Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 647 (7th Cir.1993); see also Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1257 n. 8 (3rd Cir.1993); Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts, 954 F.2d 299, 304 (5th Cir.1992). Because the rule that exceptions, exemptions, exclusions, provisions and limitations affecting coverage are construed strictly against the insurer is inherent within the rule of contra proferentem and consistent with congressional policy concerns, it should be recognized as part of the federal common law of rights and obligations under ERISA regulated plans.
What is an ambiguity? An ambiguity exists if reasonable persons can find different meanings in a statute or document, Laskaris v. City of Wisconsin Dells, Inc., 131 Wis.2d 525, 389 N.W.2d 67, 70 (App.1986); when good arguments can be made for either of two contrary positions as to a meaning of a term in a document, Atlas Ready-Mix of Minot, Inc. v. White Properties, Inc., 306 N.W.2d 212, 220 (N.D.1981); when application of pertinent rules of interpretation to an instrument as a whole fails to make certain which one of two or more meanings is conveyed by the words employed by the parties. Wood v. Hatcher, 199 Kan. 238, 428 P.2d 799, 803 (Kan.1967). See also City of Sioux Falls v. Henry Carlson Co., Inc., 258 N.W.2d 676, 679 (S.D.1977); Tastee-Freez Leasing Corp. v. Milwid, 173 Ind.App. 675, 365 N.E.2d 1388, 1390 (1977); Black’s Law Dictionary 79-80 (6th ed. 1990). In this circuit, we have held that “[u]nder Texas law, a contract is ambiguous if, after applying established rules of interpretation, the written instrument ‘remains reasonably susceptible to more than one meaning.’ ” Clardy Manu. Co. v. Marine Midland Bus. Loans, Inc., 88 F.3d 347, 352 (5th Cir.1996) (quoting R & P Enterprises v. LaGuarta, Gavrel & Kirk, 596 S.W.2d 517, 519 (Tex.1980)).
The term “total disability due to mental or nervous disorders” in the group long-term *987 disability policy is ambiguous because it is susceptible to a number of reasonable interpretations. Clearly, a policy limitation on benefits due to mental illness or disorder is reasonably open to the construction that the total disability must have been caused purely by a behavioral disturbance with no demonstrable organic or physical basis. See Phillips v. Lincoln Nat Life Ins. Co. 978 F.2d 302 (7th Cir.1992) (“mental illness” limitation of ERISA plan was ambiguous as applied to participant suffering from congenital encephalopathy caused by organic illness; “mental illness” may with reason refer only to illnesses with non-physical causes such as those traceable to abuse suffered in childhood or other traumatic experiences such as divorce or bereavement or to a state of being psychotic or out of contact with reality when there is no accepted organic basis for the condition.); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534 (9th Cir.), cert. denied, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990) (upheld finding that autism was not a mental illness under an ERISA plan because the term refers to a behavioral disturbance with no demonstrable organic or physical basis.); Malerbi v. Central Reserve Life of North America Ins. Co., 225 Neb. 543, 407 N.W.2d 157 (Neb.1987) (affirming finding that a mental illness limitation did not apply to behavioral abnormalities caused by organic brain defect); Arkansas Blue Cross & Blue Shield, Inc. v. Doe, 22 Ark.App. 89, 733 S.W.2d 429 (1987) (because the cause of manic-depressive disease was organic, it was not subject to insurance policy’s mental illness limitation).
Other reasonable persons believe, however, that mental illness or mental disorder insurance limitations apply to any abnormal condition that manifests itself in symptoms that an untutored layperson without benefit of medical advice or diagnosis would call mental disorder or illness. See Brewer v. Lincoln Nat. Life Ins. Co., 921 F.2d 150, 154 (8th Cir.1990), cert. denied, 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991) (applying a mental illness limitation in an ERISA policy to deny benefits, despite expert evidence that participant suffered from affective mood disorder caused genetically or biologically, because “laypersons are inclined to focus on the symptoms of an illness; illnesses whose primary symptoms are depression, mood swings and unusual behavior are commonly characterized as mental illnesses regardless of their cause.... Regardless of the cause of his disorder, it is abundantly clear that he suffered from what laypersons would consider to be a ‘mental illness’ ”). Several caveats must be added regarding the Brewer case, however. It is one of the few ERISA cases in which a court has rejected the contra proferentem rule; consequently, the Brewer court did not construe the limitation strictly against the insurer or consider any other viewpoint than that of an ill read layperson having no expert medical advice about the particular patient in question. Also, without further refinement, the Brewer definition of mental illness would apply to, inter alia, an accident victim who exhibits abnormal behavior as the result of a traumatic head injury, a person suffering from brain cancer who develops unusual behavior, an elderly person who has contracted Alzheimer’s Disease, and a delirious person suffering from a high fever caused by a staph infection. See Phillips v. Lincoln Nat. Life Ins. Co., 978 F.2d 302, 306 at n. 2. Moreover, the Eight Circuit subsequently partially retrenched from Brewer by applying contra proferentem in the ERISA context when an ambiguity cannot be resolved by interpreting the language as would an average plan participant. Delk v. Durham Life Ins. Co., 959 F.2d 104, 105-106 (8th Cir.1992).
Another somewhat reasonable interpretation of such terms as mental or psychiatric disorder focuses on neither the cause nor symptoms of a psychiatric condition, but on the nature of the treatment involved. See Simons v. Blue Cross & Blue Shield of Greater New York, 144 A.D.2d 28, 536 N.Y.S.2d 431 (N.Y.App.Div.1989) (hospitalization for treatment of malnutrition due to anorexia nervosa was not subject to the limitation of coverage applicable to in-hospital care for psychiatric disorders; regardless of whether anorexia nervosa was a mental illness or psychiatric disorder, the purpose of hospitalization was to treat the physical aspects of malnutrition and hypo-tension, including naso-gastric feeding and medication — thus the hospitalizations were medical treatment, not psychiatric care).
*988 Both the manifestation/symptom and the nature of treatment approaches, reflected in cases such as Brewer and Simons, have been criticized by commentators as flawed methods of analyzing whether a particular mental illness should be subject to insurance coverage limits or exclusions. Before the development of brain research, reasonably intelligent persons could reach a broad consensus on what was a mental or physical disorder. Steven P. Garmisa, “Mental Illness ” Limitation in Health Insurance Policies, Chicago Daily Law Bulletin, Nov. 6, 1990 at 2. However, because of medical findings that serious illnesses once considered purely mental, such as schizophrenia, bipolar affective disorder, and depressive illness are physical brain diseases, reasonable persons can disagree sharply on the meaning of “mental or nervous disorder.” The average layperson’s understanding should be constantly changing with advances in medical research. As the public learns more about the actual causes and treatments for mental illness, it follows that the average layperson’s understanding of terms such as “mental illness” and “psychiatric treatment” will change as well. Brian D. Shannon, The Brain Gets Sick, Too— The Case For Equal Insurance Coverage For Serious Mental Illness, 24 St. Mary’s L.J. 365, 370-382 (1993).
Nevertheless, regardless of any arguments over their merits, there are at least three reasonable interpretations of insurance coverage limitations upon benefits payable because of disability or treatment due to mental disease, disorder or illness. In particular, the limitation at issue in the present case upon benefits for “Total Disability due to mental or nervous disorders” is susceptible to each of the three reasonable interpretations. The term is not defined in the policy and it remains ambiguous after applying ordinary principles of contract interpretation. Therefore, applying the rule of contra profer-entem in accordance with this Circuit’s precedents of Todd v. AIG Life Ins. Co., supra; Ramsey v. Colonial Life Ins. Co. of America, supra; and Hansen v. Continental Ins. Co., supra, the term should be construed strictly against the insurer and in the reasonable sense that is most favorable to the insured, viz., that “total disability due to mental or nervous disorders” means a behavioral disturbance with no demonstrable organic or physical basis.
Consequently, summary judgment is not appropriate because the record discloses that there is a genuine issue as to a material fact, i.e., whether Lynd suffers from a total disability due to a behavioral disturbance with no demonstrable organic or physical basis, and that the moving party is not entitled to a judgment as a matter of law. In opposition to Reliance’s motion for summary judgment and in support of his own, Lynd filed the deposition of his treating psychiatrist who testified that Lynd was totally disabled due to a major depression that has a physiologic basis every bit as much as diabetes, hypertension, cardiomyopathy or other diseases and is caused by the dysfunction of the neurotransmitters in his brain. See Deposition of Arthur Dumont, III, M.D., at pages 31, 39, 40, 43, 49, 42, 52, 56, 57 (attached to the motions for summary judgment filed by Lynd and Reliance). Clearly, the doctor’s testimony provides the basis for a reasonable trier of fact to find or infer that Lynd is totally disabled due to a major depression having an organic or physiologic basis and not due to a behavioral disturbance with no demonstrable organic or physical basis. In conducting summary judgment review a court must keep in mind that summary judgment should be granted when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. This standard closely resembles that used for entry of a directed verdict, where the district court must direct a verdict if there can be only one reasonable decision made under the governing law. London v. MAC Corp. of America, 44 F.3d 316 (5th Cir.), cert. denied, — U.S. -, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995); Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969).
The District Court did not actually reach the issues discussed here because it failed to appreciate that a de novo review of Reliance’s denial of benefits is required by Firestone under the policy and limitation clause at issue. That court fell into error by applying deference in reviewing Reliance’s denial *989 of benefits and concluding that the insurer had not acted arbitrarily or capriciously. Significantly, however, the district court stated that it might have reached a different result had it applied the de novo standard, indicating that it might have refused to grant a summary judgment for Reliance had it made á plenary review of the policy and limitation of coverage provision.
My colleagues in the majority have fallen into error in affirming the trial court’s result because they likewise failed to perform a de novo review of the policy and its limitation provision and because they failed to follow the precedents of this Circuit which require the application of the rule of contra preferen-tem. If they had not lapsed in these respects they surely would have recognized that the limitation clause is ambiguous, construed it strictly against the insurer, realized that under the reasonable interpretation that is most favorable to Lynd there is a genuine dispute as to a material fact and that Reliance is not entitled to judgment as a matter of law, and would have reversed the summary judgment and remanded the case for trial or further proceedings.

. It should be noted, however, that if Lynd’s claim had been for benefits payable for “services rendered for the treatment of mental or nervous disorders” rather than for disability benefits, state law, viz., La.R.S. 22:669, may have been applicable and required the payment of such benefits “under the same circumstances and conditions as benefits are paid under [the policy] for all other diagnoses, illnesses, or accidents.” Id. at § 664.A.(1); see Rudloff v. Louisiana Health Services & Indemnity Company, 385 So.2d 767 (La.1979); Hayden v. Guardian Life Ins. Co. of America, 500 So.2d 831 (La.Ct.App.1986); Hargroder v. Protective Life Ins. Co., 559 So.2d 1367 *986 (La.1990); McKenzie & Johnson, 15 Louisiana Civil Law Treatise—Insurance Law and Practice § 291 (Supp.1995). State laws regulating insurance are not preempted by the federal ERISA statute. Metropolitan Life Ins. Co. v. Massachusetts. 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); Compare Children’s Hospital v. Whitcomb, 778 F.2d 239 (5th Cir.1985) (ERISA preempts R.S. 22:669 under uninsured plans but not under insured plans [such as that insured by Reliance in the present case].).