ARKANSAS BLUE CROSS AND BLUE SHIELD, INC.
*v.* John DOE, as Parent and Next Friend of Jane DOE

CA 86-406                    733 S.W.2d 429

Court of Appeals of Arkansas
En Banc
Opinion delivered July 29, 1987
[Rehearing denied September 9, 1987.]

*Wright, Lindsey & Jennings*, for appellant.

*Daggett, Van Dover, Donovan & Cahoon*, by: *Robert J. Donovan*, for appellee.

GEORGE K. CRACRAFT, Judge. Arkansas Blue Cross and Blue Shield, Inc., appeals from a judgment of the Lee County Circuit Court, sitting as a jury, finding it liable to appellee policyholders for benefits provided for a physical condition rather than those provided for a mental one and allowing the pro se appellee an attorney's fee. It contends that the trial court erred in finding that appellee's daughter's hospitalization and treatment were for a physical illness rather than a mental condition, in excluding the testimony of appellant's actuarial manager, and, because appellee was also a witness in the case, in holding that he, as a pro se attorney, was entitled to an allowance of fees.

On February 25, 1987, we granted a joint motion to certify this case to the supreme court pursuant to Rule 29(1)(c) and (4)(b) of the Rules of the Arkansas Supreme Court and Court of Appeals. On June 9, 1987, the case was remanded to the court of appeals for decision. Accordingly, jurisdiction lies in this court. We find no error and affirm.

The appellee and his minor daughter were insured under a group health insurance policy issued by appellant to appellee's law firm. The policy provided liberal benefits for hospitalization and medical treatment for physical illness and accidental injury, but limited coverage for medical and hospital expenses incurred as a result of mental, psychiatric, or nervous conditions. The policy did not define either mental or psychiatric condition. Appellee's daughter was hospitalized and treated for a disorder diagnosed as bipolar affective disorder. The appellee submitted the expenses for her hospitalization and treatment but only those limited benefits provided for mental conditions were paid. Appellant contended that the child's disorder was a mental condition for which she had received psychiatric treatment and therefore was entitled only to limited benefits. The appellee brought this action to recover full benefits provided in the policy for an illness of a physical nature.

The appellee testified that he was a practicing attorney and the father of the insured minor whose developing problem became acute in 1984. She spent a great deal of time in bed crying and developed eating and sleeping problems. She lost weight and at times was in deep depression. In those periods, she would lose interest in all those things in which other children her age were engaged. At times, she was suicidal and talked about dying. At other times, she was energetic and her sleeping and eating patterns were near normal. She was subsequently hospitalized and was seen by psychiatrists. She was prescribed medications for her condition and has improved to such an extent that she is now a different person. Her mood, weight, and eating problems have stabilized and are now normal. Her sleeping patterns, though variable, are near normal. She is attending a special school and has reasonable expectation for a normal life so long as she remains on her medication.

Dr. Thomas Harris, a treating psychiatrist, testified that those of the medical profession who dealt in mental conditions had historically categorized these illnesses by symptom rather than cause. He stated that bipolar affective disorder, referred to in the past as manic-depressive disorder, is characterized by those symptoms described by the appellee but that "I think most laymen, and actually I think most physicians and most people in psychiatry now classify illnesses by cause or origin." Although

classified according to symptoms as a mental disease by some in the profession, he stated it is in fact a physical disorder. "The medical research is now, in my opinion, overwhelming in that regard." He stated that it was an illness of the brain and body rather than of the mind and stemmed from a chemical imbalance which responds to medication. This illness, like many others he described, manifests some behavioral or emotional disturbances, but the causes of those manifestations are physical and biological in nature as distinguished from mental.

There was evidence that, although bipolar affective disorder originates as a physical illness which requires and responds to medical treatment, psychotherapy is utilized in several ways in treatment of the disease, as was done in Jane Doe's case. It helps the patient accept the fact of her illness and learn to cope with it. It also assists the patient in becoming accustomed to normal feelings and reactions and learning the importance of taking the prescribed medication necessary to continued recovery. It is further utilized in measuring the effect of medication on a person's mood levels in order that proper adjustment could be made in medicine dosages.

Dr. John Leite, a clinical psychologist who treated the minor appellee, testified that "[o]f all the kids I've seen, [Jane Doe's] is most clearly a biologically-based illness." Dr. Anne Utley, a treating psychiatrist, stated that, although bipolar affective disorder is classified as a mental problem, there are physical causes for it. Dr. Dolores DiGaetano, a psychiatrist, agreed that bipolar affective disorder was caused by hormonal imbalance and that it was a biological condition. Dr. Douglas Stephens, a clinical psychologist, testified positively that bipolar affective disorder was a physical disorder resulting from metabolic imbalance. Dr. Stuart Harris, a psychiatrist, also agreed that it was a biological, physical disorder of the brain function with multiple symptomatic manifestations.

There was evidence from medical witnesses that the classification of illnesses by symptoms by those in the psychiatric field was a primitive way of classification and that the profession was moving away from that method. It was pointed out that the Arkansas Psychiatric Society at its 1986 meeting had declared "[b]ipolar affective disorder is an illness whose origin is

biological."

Appellant offered evidence of its director of claims that the classification system used by Blue Cross-Blue Shield was the same as that generally used by medicare and most hospitals, physicians, and clinics in the country. Under that system, bipolar affective disorder is classified as a mental disorder. Though most of the doctors who testified in person or by deposition indicated that the psychiatric field did classify bipolar affective disorder as a mental condition, all but one of those agreed that it was so classified by symptom rather than cause.

We agree with the trial court that the issue for its determination was whether bipolar affective disorder is a physical illness or a mental or psychiatric condition within the terms of the policy. On conflicting evidence, it expressly found that "the illness of Jane Doe is a physical condition within the meaning of the Blue Cross contract" and not a mental one. Findings of fact of a circuit court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence and, in making that determination, we give due regard to the superior position of the trial court to judge the credibility of the witnesses. *National Investors Fire & Casualty Insurance Co.* v. *Chandler*, 4 Ark. App. 116, 628 S.W.2d 593 (1982). We cannot conclude on the facts of this case that the finding of the trial court is clearly against a preponderance of the evidence.

Appellant argues that the trial court erred in its conclusions because words of art connected with a profession are to be given the meaning given them by experts in that field. *Les-Bil, Inc.* v. *General Waterworks Corp.*, 256 Ark. 905, 511 S.W.2d 166 (1974). It contends that, as the manuals used by most hospitals, insurers, and those in the mental health profession classify bipolar affective disorder as a mental condition, the trial court should have so found.

Although the expert witnesses testified that bipolar affective disorder was classified as a mental condition, all but one agreed that only its symptoms fell within that classification and its cause was physical. There was credible evidence from which the court could have found that classification of illnesses by symptom rather than cause was falling into disfavor within the mental health profession, and a large number of physicians and

people in psychiatry were now classifying illnesses by their cause or origin. There was also evidence that the Arkansas Psychiatric Society had declared bipolar affective disorder to be an illness having a biological, rather than mental, origin. Furthermore, we agree with the trial court that those classification manuals used by physicians, hospitals, and medical insurers would not be controlling on this issue because they were not adopted in, referred to, or made a part of the policy. Certainly, upon this evidence, a question of fact was made for the factfinder to determine. *See Mutual Benefit Health & Accident Assn.* v. *Rowell*, 236 Ark. 771, 368 S.W.2d 372 (1963).

Appellant next contends that the trial court erred in excluding the proffered testimony of its actuarial manager pertaining to underwriting and rating criteria used by Blue Cross-Blue Shield to calculate risks and determine premium charges. He testified that the insurer did offer a broader mental condition coverage but for a higher premium. He testified as to experience in other states and reached the conclusion that the extended coverage for mental illness would require substantial increases in cost to Blue Cross-Blue Shield and/or in premiums to its customers.

The appellee's objection to the appellant's actuarial evidence was taken under advisement by the trial court but, at the close of the trial, was sustained because the court found the evidence to be irrelevant to the issues then before it. Appellant argues that it was relevant because the cost factors of additional coverage for mental conditions were taken into account when the premiums were set. It argues that calculation of risk and concomitantly the amount of premiums are factors to be considered in interpreting policy provisions.

Although the amount of the premium may not affect the plain wording of the policy, it is a fact which may be taken into consideration in construing doubtful or ambiguous policy language. 2 *Couch on Insurance* §§ 15:52 and 15:82 (1984). Here, the actuarial testimony dealt with the entire field of conditions classified as mental in nature, including those that truly may not have physical causes. Bipolar affective disorder was said by the medical experts not to be a mental condition and to affect only one percent of the population. There was no evidence as to how coverage for this particular disease might have affected premium

calculation. Furthermore, we note that the trial judge ruled that, even if that evidence was considered, it would not have altered his decision. The determination of the relevancy of evidence lies within the sound discretion of the trial court, and its ruling on this issue will not be disturbed in the absence of an abuse of that discretion. *Dooley* v. *Cecil Edwards Construction Co., Inc.*, 13 Ark. App. 170, 681 S.W.2d 399 (1984). We cannot conclude that the trial court abused its discretion in this case.

After judgment for the full amount claimed under the policy was announced, the court granted a subsequent motion allowing appellee penalties, interest, and attorney's fees pursuant to Ark. Stat. Ann. § 66-3238 (Repl. 1980). Appellant does not question that appellee recovered the full amount claimed in his amended complaint or that the attorney's fee allowed by the court was a reasonable one. It contends only that, as the appellee was litigant, advocate, and witness in the case, neither he nor his law partners are entitled to attorney's fees. Appellant relies on the well-established rule that an attorney may not appear for his client as both advocate and witness as declared in *Milburn* v. *State*, 262 Ark. 267, 555 S.W.2d 946 (1977). It further argues that one acting in such a dual capacity may not even be allowed fees for his prior preparation of a case unless he has completely withdrawn from further participation, citing *Aetna Casualty and Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984).

That line of cases is based upon the ethical rule that a lawyer not accept employment in litigation if he knows, or it is obvious that he, or a lawyer in his firm, ought to be called as a witness. There are many sound reasons for such a rule, most of which are set out in the commentaries to the rule and in *Ford* v. *State*, 4 Ark. App. 135, 628 S.W.2d 340 (1982). In *Boling* v. *Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979), the court cited a number of cases in which it had recognized exceptions to that rule, none of which are applicable here.

The appellee makes a very persuasive argument that this rule has no application because he had a right to appear and present his case pro se. He contends that his right to act as pro se counsel carries with it the right to participate in all phases of the case and those rights should not be curtailed because he happens to be a licensed attorney. We do not reach that issue, however,

because we conclude that, on the facts of this case, the appellee's right to participate as litigant, advocate, and witness is expressly excluded from the provisions of the present rule governing professional conduct.

Rule 3.7 of the Model Rules of Professional Conduct[1] provides as follows:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness *except where*:
>
> (1) *the testimony relates to an uncontested issue*;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

(Emphasis added).

Here, appellee testified that he was a licensed, practicing attorney and the father of Jane Doe. He outlined to the court his observations of her behavioral pattern prior to seeking medical assistance, her present condition, pursuits, and plans for the future. None of his testimony related to an issue in controversy nor conflicted with the testimony of any other witness. All medical witnesses for both sides agreed that the child did have those behavioral patterns and symptoms to which he testified and all based their professional opinions and conclusions on that statement of history. The symptoms that the father described were not in issue. The material issue in the case was not what her symptoms were, but the conclusions to be reached from that agreed upon medical history.

The commentary to Rule 3.7 points out that, because a witness is required to testify on the basis of personal knowledge while the advocate is expected to explain and comment on the

---

[1] Adopted by the Arkansas Supreme Court on December 16, 1985, in the per curiam *In the Matter of the Arkansas Bar Association: Petition for the Adoption of Model Rules of Professional Conduct*, 287 Ark. 495, 702 S.W.2d 326 (1985), to become effective January 1, 1986.

evidence given by others, it may not be clear to the factfinder whether the statement by an advocate witness should be taken as proof from personal knowledge or as analysis of that proof by an advocate. It further recognizes, however, that, if the testimony is uncontested, the ambiguities resulting from the dual role become purely theoretical. As the appellee's testimony did not relate to any contested issue, the prohibition contained in Rule 3.7 applied to neither him nor his partners.

At the time the petition for award of attorney's fees was filed, appellee's partners filed an affidavit with the court in which they stated they were making no claims for any attorney's fee in the case. It is argued that the pro se appellee should not be allowed fees under these circumstances. We do not agree.

It is well settled that attorney's fees are awarded under Ark. Stat. Ann. § 66-3238 not as property of the attorney but by way of indemnity to the litigant. *Equitable Life Assurance Society of the United States* v. *Rummell*, 257 Ark. 90, 514 S.W.2d 224 (1974). In this case, appellee was the litigant. The rule applied in the majority of decided cases, with which we agree, allows statutory attorney's fees to pro se litigants. The rule is discussed in *McMahon* v. *Schwartz*, 109 Misc.2d 80, 438 N.Y.S.2d 215 (1981), as follows:

> [T]he party, being an attorney, gives the professional time, knowledge, and experience in the conducting or defense of his suit, which he would otherwise have to pay an attorney for rendering. It can make no difference to the defeated party, who is by law bound to pay the costs of the prevailing party, or a fixed equivalent under the Code for it, whether that attorney is the prevailing party himself or another attorney employed by him. The plaintiff, like any other professional man, is paid for his time and services, and if he renders them in the management and trial of his own cause it may amount to as much pecuniary loss or damage to him as if he paid another attorney for doing it.

*See also Parker 72nd Associates* v. *Isaacs*, 109 Misc.2d 57, 436 N.Y.S.2d 542 (1980); *Winer* v. *Jonal Corp.*, 169 Montana 247, 545 P.2d 1094 (1976); *Weaver* v. *Laub*, 574 P.2d 609 (Okla. 1977); Annot., 78 A.L.R.3d 119 (1977).

Affirmed.