Leslie Ray **EASLEY**, Appellant,

v.

The **OKLAHOMA STATE AND EDUCATION EMPLOYEES GROUP INSURANCE BOARD**, Appellee.

No. 78202.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 15, 1992.

Sharon H. Scott, Stillwater, Okl., and, Stanley M. Ward, Norman, Okl., for appellant.

Kathryn B. Austin, Oklahoma City, Okl., for appellee.

## MEMORANDUM OPINION

GARRETT, Judge:

Leslie Ray Easley (Easley) was employed by the Oklahoma Department of Corrections for fifteen years when he became disabled. Easley's disability was caused by numerous health problems, including: Type II diabetes mellitus with hypoglycemic attacks; panic attacks; and, gastric dysfunction. He applied to the Oklahoma State and Education Employees Group Insurance Board (Board) for benefits and received two years of combined sick leave and disability benefits. It was during that two year period of time that Easley was diagnosed as having bi-polar affective disorder commonly known as manic depression. Easley is treated with lithium carbonate which controls the symptoms of the bi-polar affective disorder to some extent.

At the end of the two year period, the Board terminated Easley's benefits. The Board characterized the bi-polar affective disorder as a mental and/or nervous disorder. Therefore, he was entitled to a maximum of 24 months of disability benefits. The rules and regulations relating to the disability program are set out in a handbook issued by the Board and distributed to covered employees. If Easley is disabled, by an illness or injury other than a mental and/or nervous disorder, he may be entitled to long term benefits up to age 65.

Easley requested a hearing before the Grievance Panel of the Administrative Tribunal of the Board and claimed the bi-polar affective disorder is a condition with a physical or organic origin, and he was therefore entitled to extended benefits. The Grievance Panel of the Administrative Tribunal upheld the Board's findings and limited his disability benefit to two years. Easley appealed to Payne County District Court. The District Court remanded the case to the Grievance Panel of the Administrative Tribunal for a de novo hearing. At the new hearing, the Grievance Panel again upheld the Board's findings. Easley appealed a second time to the District Court. This time the Board's decision was affirmed and Easley filed this appeal.

As his first assignment of error, Easley argues that his substantial rights were violated because a de novo trial was not conducted at the second administrative tribunal hearing. He contends the following remarks made by the chairman of the administrative tribunal:

> [There was] "not sufficient evidence presented to reverse the previous grievance panels judgment findings resulting in Mr. Easley's entitlement to disability insurance benefits until he is 65 years of age."

show that the tribunal merely reconsidered their previous decision, and did not give him a trial de novo. He further contends that pursuant to 75 O.S. (1981) § 318(1) he has the right to a trial de novo before the District Court and was not granted the same.

75 O.S. (1981) § 318(1), which relates to judicial review of an administrative proceeding and provides:

> Any person aggrieved or adversely affected by a final order in an individual proceeding, whether such order is affirmative or negative in form, is entitled to certain, speedy, adequate and complete judicial review thereof under this act, but nothing in this section shall prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.

A review of the record shows that Easley was, in effect, afforded a trial de novo at the second administrative hearing. He was allowed to introduce evidence and testimony that was not previously introduced. Section 318 provides for judicial review by the District Court of an agency's written findings of fact and conclusions of law. See *Roussel v. State ex rel., Grimes*, 614 P.2d 53 (Okl.1980). The District Court did the review and determined that no substantial rights of Easley had been prejudiced. Easley has not shown a violation of any constitutional provision.

■ Next, Easley contends that his benefits should have been extended to age 65 since he presented evidence to the administrative tribunal that showed the bi-polar affective disorder to be physical or organic in its origin and the Board did not present evidence to the contrary. The Board agrees that the bi-polar affective disorder was physical or organic in its origin, but contends this does not change the 24 month limitation on benefits. In its Rules and Regulations, and in its handbook, a mental or nervous disorder is defined as "a neurosis, psychoneurosis, psychopathy, psychosis, or mental or emotional disorder of any kind." No reference is made to the origin of the illness, whether physical, organic or otherwise. The Board contends that while this disability may be organic in origin, it is still a nervous or mental disorder; and, such an illness is specifically excluded from extended coverage regardless of its origin.

While persuasive only, the 8th Circuit, in *Brewer v. National Life Insurance Co.*, 921 F.2d 150, 154 (8th Cir.1990), said:

> The cause of a disease is a judgment for experts, while laymen know and understand symptoms. Laymen are undoubtedly aware that some mental illnesses are organically caused while others are not; however, they do not classify illnesses based on their origins. Instead, laypersons are inclined to focus on the symptoms of an illness; illnesses whose primary symptoms are depression, mood swings and unusual behavior are commonly characterized mental illnesses regardless of their cause. Neither policy

in this case limited the definition of "mental illness" to only those illnesses of non-organic origin, ...

Such is the case here. In the case being considered, mental illness includes a "mental or emotional disorder of any kind." The evidence supports the Board's finding that the bi-polar affective disorder [manic depression] is a mental or nervous disorder.

Several other states recognize bi-polar affective disorder as organic in origin, and some states have required coverage for bi-polar affective disorder to be the same as for any other medical illness, but such is not the case in Oklahoma. Easley's reliance on the Arkansas case of *Arkansas Blue Cross and Blue Shield, Inc. v. Doe*, 22 Ark.App. 89, 733 S.W.2d 429 (1987) is misplaced. That case hinged on the fact that the insurance contract definition of "mental illness" was ambiguous.

■ Easley contends that the definition of mental illness in the Board's rules and regulations is ambiguous and that ambiguity should be resolved against the Board. The contention centers on the claim that the origin of bi-polar affective disorder is organic in nature, and, therefore, should not be considered a mental or nervous disorder. Easley further contends the phrase "mental or emotional disorder of any kind" is unconscionable and against public policy. He mistakenly contends this is an action for a breach of an insurance policy. The disability program is a benefit provided by the State for its employees. Mental disorders are specifically excluded from extended coverage. The employee, as a matter of public policy, is entitled to the benefits provided, no more and no less. Failure to provide some additional benefit, such as is involved here, does not violate public policy. The program, as adopted, with its inclusions and exclusions, is public policy. There is no ambiguity in the definition of mental and/or nervous disorder. This contention lacks merit.

■ Finally, Easley contends that the Board is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1381 (ERISA). However, because 36 O.S.1981 § 4501 et seq., governs the employee health insurance, it is

specifically excluded from ERISA. See *Kunin v. Benefit Trust Life Insurance Co.*, 910 F.2d 534 (1990).

We find no error.

AFFIRMED.

ADAMS, P.J., and JONES, J., concur.